IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Darren S. Simmons, #182509, | ) | Civil Action No. 5:11-175-RMG-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Nurse Shelly Stokes; SCDC Director of | ) | |
| Prisons Byers; Rolland McFadden; Robin | ) | |
| Chavis; Amy Smith, RN, Nurse; Health | ) | |
| Care Providers; MD Dr. Sampson; MD | ) | |
| Robert Shulze, Jr.; MD Martin Dommers; | ) | |
| MD Jennifer A. Feldman; Nurse | ) | |
| Rainwater; Ms. Martin; Nurse Ms. Roman; | ) | REPORT AND RECOMMENDATION |
| Ms. Fox, Mental Health Services; Redfern | ) | |
| Miller, Grievance Coordinator; Nurse Mr. | ) | |
| Jake Spires; Ms. Williams, Nurse; Ms. | ) | |
| Spiveys, Nurse RN; and Ms. Jacobs, | ) | |
| Correctional Officer; Willie Eagleton; | ) | |
| William Bradham, MD; Nurse Morton | ) | |
| Kelley; Paul C. Drago, MD; Kwayalein C. | ) | |
| Muhammad; and Donika K. Jenkins, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Darren S. Simmons ("Plaintiff"), #182509, is a state prisoner in the custody of

the South Carolina Department of Corrections ("SCDC") for violation of state law. Plaintiff

filed this action pro se seeking compensatory, declaratory, and injunctive relief pursuant to 42

U.S.C. § 1983 for violations of his constitutional rights allegedly committed by individuals

Plaintiff identified as follows: Nurse Shelly Stokes ("Stokes"); SCDC Director of Prisons Byers

("Byers"); Rolland McFadden ("McFadden"); Robin Chavis ("Chavis"); Amy Smith ("Smith"),

RN, Nurse; Health Care Providers ("HCP"); MD Dr. Sampson ("Sampson"); MD Robert Shulze,

Jr. ("Shulze"); MD Martin Dommers ("Dommers"); MD Jennifer A. Feldman ("Feldman");

Nurse Rainwater ("Rainwater"); Ms. Martin ("Martin"); Nurse Ms. Roman ("Roman"); Ms. Fox

("Fox"), Mental Health Services; Redfern Miller ("Miller"), Grievance Coordinator; Nurse Mr.

Jake Spires ("Spires"); Ms. Williams ("Williams"), Nurse; Ms. Spiveys ("Spiveys"), Nurse RN;

Ms. Jacobs ("Jacobs"), Correctional Officer; Willie Eagleton ("Eagleton"); William Bradham

("Bradham"), MD; Nurse Morton Kelley ("Kelley"); Paul C. Drago ("Drago"), MD; Kwayalein

C. Muhammad ("Muhammad"); and Donika K. Jenkins ("Jenkins"). *See* ECF Nos. 1, 16, 17,

142, 147. This matter is before the court on the motion for summary judgment pursuant to Rule

56 of the Federal Rules of Civil Procedure, which was filed collectively by Stokes, Byers,

McFadden, Chavis,[1] Smith, HCP,[2] Sampson, Rainwater, Martin, Roman, Fox, Miller, Spires,

Williams, Spiveys, Jacobs, Eagleton, Bradham, Kelley, Drago, Muhammad, and Jenkins

(collectively the "Defendants"). ECF No. 298. Also, before the court is a motion for summary

judgment, which Dommers filed separately from Defendants' motion. ECF No. 316.

Because Plaintiff is proceeding pro se, he was advised in *Roseboro* orders regarding the

importance of dispositive motions and the need for him to file adequate responses.[3] ECF Nos.

299, 320. Plaintiff filed opposition to both motions for summary judgment asserting that issues

of material fact exist precluding an award of summary judgment to Defendants. ECF Nos. 328,

334. In addition, Plaintiff filed his own motion for summary judgment, which motion joined

Plaintiff's other motions pending before the court for judgment on the pleadings, for a temporary

restraining order, for preliminary injunction, and for permanent injunction. ECF Nos. 327, 368,

425, 426, 445, 450. These motions were referred to the undersigned United States Magistrate

Judge for pretrial handling in accordance with the provisions of 28 U.S.C. § 636(b) and Local

---

[1] Chavis was dismissed from the action on June 15, 2011. ECF No. 115.

[2] HCP was dismissed from the action on April 26, 2011. ECF No. 53.

[3] On September 21, 2011 and September 28, 2011, United States Magistrate Judge Jacquelyn D. Austin entered "*Roseboro* orders" in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

Rule 73.02 D.S.C.[4]  Accordingly, the undersigned enters this Report and Recommendation for the court's review.

I.      Relevant Factual and Procedural Background

The facts as viewed in the light most favorable to Plaintiff are as follows.  Plaintiff is currently imprisoned at the McCormick Correctional Institution in McCormick, South Carolina. ECF No. 142 at 2 ¶ 3; ECF No. 371.  At times relevant in this action, including from October 2007 to November 2011, Plaintiff was housed by the SCDC at the Evans Correctional Institution in Bennettsville, South Carolina.  ECF No. 298-4 at 50; ECF No. 298-5 at 1; ECF No. 370.  In 1991, Plaintiff suffered blunt trauma to his head, which impact caused Plaintiff to suffer a closed head injury or chronic subdural.  ECF No. 298-3, pp. 16-17, 36.  On or about September 19, 1996, an echocardiogram[5] was performed on Plaintiff, which test revealed that Plaintiff had a relatively normal heart, except for an enlarged left ventricle and mildly enlarged left and right atria.  ECF No. 298-3 at 35.  On or about October 29, 1996, additional medical testing revealed that Plaintiff also suffered from neurocardiogenic syncope, which can cause the "temporary loss of consciousness associated with a drop in arterial blood pressure, quickly followed by a slowed heart rate."[6]  ECF No. 298-3 at 21, 27.  On December 12, 1996, a magnetic resonance imaging (MRI) was taken of Plaintiff's brain, which revealed findings that were of "no clinical significance."  ECF No. 298-3 at 16. On January 15, 2007, Plaintiff suffered a heart attack.  ECF No. 142 at 6. Thereafter, Plaintiff was plagued by severe chest pains, dizziness, shortness of

_____

[4] On January 2, 2012, the matter was reassigned from United States Magistrate Judge Jacquelyn D. Austin to the undersigned.  (ECF Nos. 394, 395.)  Other pending motions are addressed within.
[5] An echocardiogram is "'the record produced by echocardiography.'  Echocardiography is: a method of graphically recording the position and motion of the heart walls or the internal structures of the heart and neighboring tissue by the echo obtained from beams of ultrasonic waves directed through the chest wall." *Graham v. Rosario*, C/A No. 3:09-1535-RBH-JRM, 2010 WL 4674252, at *3 (D.S.C. June 8, 2010) (quoting *Dorland's Illustrated Medical Dictionary* 595 (30th ed. 2003).
[6] This definition for neurocardiogenic syncope is available at http://www.dinet.org/NCS/ncs.htm.

breath, severe headaches, and black outs. *Id.* Plaintiff had additional heart attacks on August 29, 2010 and September 1, 2010. *Id.*

On April 7, 2010, Plaintiff signed up for a medical care appointment or "sick call," but the sick call was cancelled. *Id.*; ECF No. 1-1 at 10. On April 12, 2010, Plaintiff filed a "Step 1" grievance regarding the cancelation of his sick call appointment for April 7, 2010. *Id.* The SCDC determined that Plaintiff's grievance was without merit because he did not appear for sick call on April 8, 2010 and he received treatment from medical personnel of the SCDC on April 16, 2010. *Id.* at 11. Plaintiff then filed a "Step 2" grievance on May 18, 2010, which the SCDC denied on June 16, 2010. *Id.* at 8. Plaintiff appealed the SCDC's decision to the Administrative Law Court.[7] *Id.* at 2-7. Plaintiff initiated other "Step 1" grievances on July 9, 2010, July 12, 2010, November 1, 2010, December 3, 2010, and December 13, 2010, in which he complained about the medical care he was receiving. *Id.* at 12-16, 18. The SCDC denied outright or refused to process these additional grievances regarding Plaintiff's medical care. *Id.*

On January 24, 2011, Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 against Stokes, Byers, McFadden, Chavis, Smith, HCP, Sampson, Rainwater, Martin, Roman, Fox, Spires, Dommers, Feldman, and Shulze, alleging that these individuals had been deliberately indifferent to his serious medical needs and had deprived him of and interfered with his medical care. ECF No. 1. Plaintiff specifically alleged in the complaint that Stokes refused to give him his Metropolol/Lopressor/Diuretic heart medications on January 15, 2011 and his condition remained untreated for 1.5 years; McFadden, Chavis, and Smith failed to respond to Plaintiff's request to send him to an outside hospital to be treated by a "brain neurologist – and head specialist"; McFadden, Chavis, and Eagleton failed to respond to correspondence Plaintiff sent in February 2010 documenting his discovery that he had been diagnosed with a "closed head

---

[7] The undersigned did not find information regarding the outcome of this appeal in the record.

injury;" Smith failed to respond to correspondence Plaintiff sent requesting that he be allowed to have his closed head injury treated by a "hospital outside specialist"; Chavis failed to respond to correspondence Plaintiff sent putting Chavis on notice about his closed head injury; and Eagleton wrongfully asked Plaintiff on November 12, 2010 "who diagnosed [Plaintiff] with the above conditions." ECF No. 1 ¶¶ 3, 5, 7, 8. In his prayer for relief, Plaintiff requested that the court award him $2.00 punitive damages from each defendant individually and compensatory damages in the following amounts: $150,000 from McFadden, Chavis, Eagleton, and Smith; $180,000 from Shulze and Feldman; $80,000 from Sampson; $110,000 from Dommers; and $100,000 from Fox. *Id.* at 5.

On March 2, 2011, Plaintiff filed a document titled "Interrogatives Jury Trial Demanded," which submission was construed by the court as an amended complaint. ECF No. 16. In his Amended Complaint, Plaintiff requested a jury trial and alleged that McFadden deprived Plaintiff of receiving outside medical treatment, Stokes interfered with doctors trying to treat Plaintiff for "Hypotention and Neurocariogenic Syncope," and Fox deprived Plaintiff of receiving mental health treatment for his "Chroinic [sic] Schizophrenia Auditory Hallucinations." ECF No. 16 at 1-2, 5. On March 3, 2011, Plaintiff filed a motion for leave to file an amended complaint seeking to add Williams, Spiveys, and Jacobs as additional defendants. ECF No. 17.

On March 16, 2011, Plaintiff filed a document titled "Plaintiff's Motion of Dismissal to Dismiss Associate Warden Robin Chavis and Ms Sgt Lockemy as Defendants," which submission was construed by the court as a motion to amend the complaint. ECF No. 32. The court granted Plaintiff's motion and dismissed Chavis and Lockemy[8] from the action on June 15,

---

[8] The undersigned notes that a review of the docket does not establish that Lockemy was a party to the action prior to his dismissal.

2011. ECF No. 115. Thereafter, Plaintiff filed his Second Amended Complaint on July 1, 2011, in which he alleged that Williams, Martin, and Jacobs "deprived [Plaintiff] treatment by cancelling sick call"; Shulze and Feldman failed to treat Plaintiff's "cardiomyopathy disease of the heart muscle and mitral, tricuspid, and pulmonary valves"; Dommers, Sampson, and Bradham failed to "provide treatment for the cronic [sic] subdural brain injuries which went beneath the subarchoniod [sic] spaces and developed hemmorahage [sic] on the brain small puntate"; Chavis and Eagleton unreasonably delayed "securing [Plaintiff] appropriate treatment [by a] neurosurgeon"; Feldman, Shulze, Sampson, and Bradham tortured Plaintiff by performing a tilt table test on him, which placed Plaintiff in a "upside head down decline 80% position," when these individuals knew Plaintiff had a "hematoma in his head and a chronic subdural;" Stokes failed to provide him with his blood pressure medicine; and Fox failed to evaluate Plaintiff. ECF No. 142 at 6-9, 11-14.

In the prayer for relief of the Second Amended Complaint, Plaintiff asked the court for the following relief: (1) award him a declaration that the acts and omissions described in the amended complaint violated Plaintiff's rights under the Constitution and laws of the United States; (2) issue a preliminary and permanent injunction ordering prison staff not to discriminate and retaliate against Plaintiff, to move Plaintiff to a one-man cell on the top tier with good ventilation and fresh running water, to provide Plaintiff with adequate hygiene supplies, to change the poor prison health care system, to include 24-hour medical access, to have a nurse check Plaintiff's blood pressure and monitor his heart condition on weekends, and to hire trained nurses, neurosurgeons, and cardiologists for 24-hour services at the prison; (3) award compensatory damages in the amount of $250,000 against Dommers, Shulze, Feldman, Sampson, and Bradham individually; (4) award compensatory damages in the amount of

$100,000 from each defendant; (5) award punitive damages in the amount of $15,000 from each defendant; (6) grant Plaintiff a jury trial on all issues triable by a jury; (7) award costs and any additional relief the court deemed just, proper, and equitable as a matter of law. ECF No. 142 at 16–17.

On July 8, 2011, Plaintiff filed a motion for leave to file an amended complaint, which motion was granted by the court on August 25, 2011.[9] ECF Nos. 147, 236. In the document construed by the court as Plaintiff's Third Amended Complaint, Plaintiff added Eagleton, Bradham, Muhammad, Jenkins, and Drago as additional named Defendants. ECF No. 147 at 1-2. Plaintiff specifically alleged in the Third Amended Complaint that Eagleton ignored Plaintiff's request "for outside emergency treatment"; Bradham failed to treat Plaintiff's brain injuries or refer him to a neurosurgeon; Muhammad failed to transfer Plaintiff to a hospital on January 15, 2007, a date on which Plaintiff alleges he suffered a heart attack; Drago and Stokes falsified medical records and failed to have Plaintiff taken for his "ct scan on his abdomen or chest x-ray"; and Jenkins and Stokes "disapproved [Plaintiff] Simmons from going to image care to have the ct scan for his abdomen abnormality." *Id.* at 2-4.

In response to Plaintiff's complaints and amended complaints, Defendants and Dommers filed answers denying Plaintiff's allegations. ECF Nos. 56, 59, 60, 67, 87, 154, 155, 157, 159, 260, 268, 269, 271. Thereafter, Shulze moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 on August 1, 2011, and Feldman filed a similar summary judgment motion on August 31, 2011. ECF Nos. 185, 255. Plaintiff filed opposition to Shulze's summary judgment motion on August 10, 2011 and August 31, 2011, and filed opposition to Feldman's

---

[9] In an August 25, 2011 text order, Magistrate Judge Austin directed Plaintiff to not file any further motions to amend the complaint. ECF No. 236. Thereafter, the court found untimely any motion by Plaintiff to amend the complaint filed after August 1, 2011. As a result, the court denied motions to amend the complaint filed by Plaintiff on August 5, 2011, August 15, 2011, August 24, 2011, August 31, 2011, and December 6, 2011. *See* ECF Nos. 236, 323, 392.

summary judgment motion on September 8, 2011.  ECF Nos. 207, 250, 265.  Shulze filed a reply in support of summary judgment on August 22, 2011 and Feldman filed a reply in support of summary judgment on September 9, 2011.  ECF Nos. 231, 280.  The court granted the motions for summary judgment of Shulze and Feldman on October 19, 2011. ECF No. 354.

On September 20, 2011, Stokes, Byers, McFadden, Smith, Sampson, Rainwater, Martin, Roman, Fox, Miller, Spires, Williams, Spiveys, Jacobs, Eagleton, Bradham, Kelley, Drago, Muhammad, and Jenkins moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.  ECF No. 298.  On September 27, 2011, Dommers filed a separate summary judgment motion. ECF No. 316.  Plaintiff filed opposition to Dommers' motion for summary judgment on October 3, 2011; he filed opposition to the motion for summary judgment of Stokes, Byers, McFadden, Smith, Sampson, Rainwater, Martin, Roman, Fox, Miller, Spires, Williams, Spiveys, Jacobs, Eagleton, Bradham, Kelley, Drago, Muhammad, and Jenkins on September 30, 2011.  ECF Nos. 328, 334.

Plaintiff filed his own Motion for Summary Judgment on February 23, 2012.  ECF No. 426.  In addition, Plaintiff filed a Motion for Judgment on the Pleadings on April 6, 2012; two motions for Temporary Restraining Orders on November 4, 2011 and February 21, 2012; a Motion for Preliminary Injunction on March 29, 2012; a Motion for Permanent Injunction on September 30, 2011; a Motion for Default Judgment on January 11, 2012, and a Motion for Entry of Default on April 25, 2012. ECF Nos. 327, 368, 403, 425, 445, 450, 470.[10]

II.     Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto,* 405 U.S. 319 (1972); *see also Haines v. Kerner,* 404 U.S. 519 (1972). In considering a motion for summary judgment, the

---

[10] Other pending motions filed by Plaintiff are referenced within.

court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387 (4th Cir.1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986). The defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

If the defendant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. 477 U.S. at 324–25. An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Anderson,* 477 U.S. at 248. Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial. *Celotex,* 477 U.S. at 322–23. Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson,* 477 U.S. at 251.

III.     Analysis

A.     Claims Brought Pursuant to 42 U.S.C. § 1983

Plaintiff filed this action pursuant to 42 U.S.C. § 1983, which provides as follows in

relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). Accordingly, a civil action under section 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). To establish a claim under section 1983, a plaintiff must prove that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)). The under-color-of-state-law element of section 1983 excludes from its reach "merely private conduct, no matter how discriminatory or wrongful." *Id.* at 310 (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).

B.     Establishing a Constitutional Violation for Inadequate Medical Care

Persons in custody have the protections afforded by the Fourteenth and Eighth Amendments, which include the right to obtain adequate medical care. *City of Revene v. Mass. Gen. Hosp.*, 463 U.S. 239, 246 (1983) (holding that pretrial detainees have at least the same protections under the Fourteenth Amendment as post-trial detainees have under the Eighth Amendment); *Martin v. Gentile*, 849 F.2d 863, 866 (4th Cir. 1988) (explaining that the denial of

medical care by state officials can give rise to claims under the Fourteenth Amendment's due process clause).

Deliberate indifference to a pretrial detainee's or prisoner's medical needs is actionable under section 1983. *See Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976). To establish a claim under the Fourteenth or Eighth Amendment, a pretrial detainee or inmate must establish that a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and the prison official had a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the second prong, the prisoner must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety. *Id.* A prison official is deliberately indifferent if he or she has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk. *Id.* at 847; *Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004). To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. *See Estelle*, 429 U.S. at 106. While the Constitution requires a prison to provide prisoners with medical care, it does not demand that a prisoner receive the treatment of his choice. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks & citation omitted) (alterations in

original); *see also Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). A prisoner's disagreement as to the appropriate treatment fails to rise to the level of a constitutional claim and fails to create a genuine issue of material fact. *See Nelson*, 603 F.3d at 449; *see also O'Connor v. Pierson*, 426 F.3d 187, 202 (2d Cir. 2005) ("Lay people are not qualified to determine . . . medical fitness, whether physical or mental; that is what independent medical experts are for."); *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment."). In this regard, the failure of prison officials to take an inmate to outside hospitals or physicians as quickly or often as the inmate might have desired and any negligence or possible malpractice that might have occurred while the medical personnel were attempting to treat the prisoner's medical problem do not rise to the level of compensable constitutional violations because the conduct does not amount to deliberate indifference constituting unnecessary and wanton infliction of pain. *Estelle*, 429 U.S. at 104–05.

C.      Defendants' Motion for Summary Judgment, ECF No. 298[11]

Stokes, Byers, McFadden, Chavis, Smith, HCP, Sampson, Rainwater, Martin, Roman, Fox, Miller, Spires, Williams, Spiveys, Jacobs, Eagleton, Bradham, Kelley, Drago, Muhammad, and Jenkins argue summary judgment is appropriate on Plaintiff's claims against them because (1) Plaintiff fails to set forth specific factual allegations against Byers, Rainwater, Roman, Spires, Spivey, Drago or Kelley; (2) Plaintiff's claims against Sampson, Bradham, and Muhammad are time-barred; (3) Defendants are entitled to qualified immunity from any claims for monetary relief brought against them in their individual capacities; (4) Plaintiff fails to show that Defendants were deliberately indifferent to Plaintiff's serious medical needs; (5) the alleged

---

[11] ECF No. 298 is the Motion for Summary Judgment for Defendants other than Dommers.

failures of McFadden, Eagleton, Smith, and Miller to respond to Plaintiff's written staff requests and/or grievances do not rise to the level of constitutional violations; (6) § 1983 claims cannot be asserted against Byers, Eagleton, McFadden, and Drago on grounds of respondeat superior or vicarious liability; (7) Plaintiff may not seek damages under § 1983 against a state or a state official representing the state in his or her official capacity; (8) Plaintiff cannot establish entitlement to injunctive relief because he failed to present any evidence of wrongdoing on Defendants' part; (9) Plaintiff's Complaint and Amended Complaints are factually and legally frivolous.  ECF No. 298-1 at 7-26.  Plaintiff filed a responsive memorandum, arguing summary judgment is inappropriate. ECF No. 328. After careful review and consideration of the arguments and evidence presented, the undersigned concludes that Defendants are entitled to summary judgment in this case.  Defendants' most effective arguments for summary judgment are addressed below.

### 1.    Non-existent Allegations

The undersigned agrees with Defendants that Plaintiff's Complaint and Amended Complaints do not raise specific factual allegations against Byers, Rainwater, Roman, Spires, Spivey, Miller, and/or  Kelley.  *See* ECF Nos. 1, 16, 17, 142, 147.  Therefore, these Defendants are entitled to summary judgment.  *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (indicating that, to state a cause of action under § 1983, a plaintiff must allege that a named defendant deprived him or her of a federal right, and did so under color of state law.); Vinnedge v. Gibbs, 550 F.2d 926, 928-29 (4th Cir. 1977) (finding dismissal proper when plaintiff did not allege a defendant acted personally in alleged deprivation of constitutional rights).

2.     Time-barred Claims

Defendants contend that Plaintiff's § 1983 claims against Sampson, Bradham, and Muhammad should be dismissed as time-barred.  Courts considering claims under § 1983 borrow from state law the general personal injury statute of limitations period.  *Owens v. Okure*, 488 U.S. 235, 249-50 (1989); *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 187 (4th Cir. 1999) ("It is well-settled that sections 1983 and 1985 borrow the state's general personal injury limitations period . . . .").  In South Carolina, the residual statute of limitations for personal injury actions is three years.  S.C. Code Ann. § 15-3-530(5).  All actions commenced under the residual three-year statute of limitations period for personal injury claims "must be commenced within three years after the person knew or by the exercise of reasonable diligence should have known that he had a cause of action."  *Id.* at § 15-3-535.  As explained by the Supreme Court of South Carolina:

> The exercise of reasonable diligence means simply that an injured party must act with some promptness where the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist.  The statute of limitations begins to run from this point and not when advice of counsel is sought or a full-blown theory of recovery developed.

*Snell v. Columbia Gun Exchange, Inc.,* 278 S.E.2d 333, 334 (S.C. 1981).  Plaintiff filed his Complaint in this action on January 24, 2011. *See* ECF No. 1. Therefore, for Plaintiff's claims in this matter to have been timely brought within the applicable three-year limitations period, the claims must have arisen on or after January 24, 2008. *See* ECF No. 1.

Upon the undersigned's review, Plaintiff's allegations and the evidence submitted by the parties only establish that Sampson and Bradham evaluated Plaintiff in September 1996 and Muhammad allegedly failed to transfer Plaintiff to a hospital on January 15, 2007, a date on which Plaintiff alleges he suffered a heart attack.  ECF No. 298-3 at 1, 3-5; ECF No. 147 (4th

Am. Compl.) at 3. Plaintiff has not presented any additional argument or evidence that Sampson, Bradham, or Muhammad performed medical services on him on a more recent date. Because there is not any evidence in the record that an aspect of the claims against Sampson, Bradham, or Muhammad arose after January 24, 2008, the undersigned recommends granting summary judgment in favor of Defendants Sampson, Bradham, and Muhammad.

### 3.      Qualified Immunity

Defendants assert they are entitled to qualified immunity from suit in their individual capacities. Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In addressing qualified immunity, "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed fully elsewhere in this report, Plaintiff has not presented sufficient evidence to support his constitutional violation allegations. Therefore, Defendants are entitled to qualified immunity from suit in their individual capacities.

### 4.      Failure to Show Deliberate Indifference

Defendants assert that summary judgment is appropriate because Plaintiff failed to show they acted with deliberate indifference to his serious medical needs. In support of their motion,

Defendants provided authenticated copies of Defendants' medical treatment demonstrating his frequent medical attention by SCDC medical staff as well as outside medical professionals. *See* ECF Nos. 298-4 and 298-5 (authenticated copies of Plaintiff's electronically stored records, which indicate Plaintiff had some 352 encounters with SCDC medical staff while incarcerated from the period of incarceration between Feb. 25, 1999-July 7, 2011) and 298-6 (authenticated copies of Plaintiff's medical records numbered 323–26, 381–83, and 391–98, documenting various times Plaintiff has been sent to medical providers outside of SCDC for diagnostic testing, evaluation, and treatment during this particular period of incarceration).

After a thorough review of the numerous pleadings and declarations filed in this case by Plaintiff, as well as Plaintiff's medical records supplied by Defendants in support of their summary judgment motion, the undersigned finds no medical evidence to corroborate Plaintiff's claims of deliberate indifference to his health and safety. Plaintiff has not offered specific evidence in support of his claim that Defendants acted in deliberate indifference to his medical needs.

Although Plaintiff argues he should have received different medical treatment, he has not demonstrated that Defendants' actions or inactions rose to the level of a constitutional violation. In this regard, a disagreement with a doctor's chosen course of medical treatment does not state a claim of deliberate indifference. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (stating that a prisoner's disagreement with a treatment plan does not constitute deliberate indifference unless exceptional circumstances are alleged). Therefore, the undersigned recommends granting summary judgment to Defendants because the evidence presented is insufficient to raise a genuine issue of fact as to whether any named Defendant was deliberately indifferent to Plaintiff's serious medical condition in violation of the Constitution.

5.      Failure to Respond to Correspondence and/or Grievances

Defendants contend that McFadden, Eagleton, Smith, and Miller are entitled to summary judgment as to Plaintiff's claim that they violated his constitutional rights by failing to respond to his written correspondence and/or grievances.  The undersigned agrees. Plaintiff's allegations that these Defendants failed to respond to correspondence and/or grievances are insufficient to hold state officials liable for constitutional violations.  *See Watson v. McGinnis*, 964 F. Supp. 127, 130 (S.D.N.Y. 1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability."); *Keeler v. Pea*, 782 F. Supp. 42, 44 (D.S.C. 1992) (violations of prison policies that fail to reach the level of a constitutional violation are not actionable under § 1983).  It is settled law that "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).  Accordingly, the undersigned recommends granting summary judgment to McFadden, Eagleton, Smith, and Miller on this claim.

6.      Respondeat Superior

Defendants assert that summary judgment is appropriate in regards to any § 1983 claims against Byers, Eagleton, McFadden, and Drago on grounds of respondeat superior or vicarious liability.  The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that a supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Fisher v. Wash. Metro. Area Transit Auth.*, 690 F.2d 1133, 1142-43 (4th Cir. 1982).  Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization.  *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984).

Plaintiff has failed to present evidence that Byers, Eagleton, McFadden, and Drago were deliberately indifferent to, or tacitly authorized, any of the alleged deliberate indifference of the other defendants. Thus, Plaintiff fails to show that Byers, Eagleton, McFadden, and Drago are liable on a theory of respondeat superior or supervisory liability, and the undersigned recommends granting summary judgment on the claims against these individuals.

7.      Eleventh Amendment Immunity

Defendants contend summary judgment is appropriate on Plaintiff's claims against Defendants in their official capacities. The Eleventh Amendment forbids a federal court from rendering a judgment against an unconsenting state in favor of a citizen of that state. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). State agencies and state instrumentalities share this immunity when they are arms of the state. *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). A suit against an officer in his official capacity is the same as a suit against the governmental entity. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Therefore, to the extent that Plaintiff's Complaint and Amended Complaints are construed as making allegations against Defendants in their "official" capacities as officials of the State of South Carolina, the undersigned recommends granting summary judgment on those claims.

8.      Injunctive Relief

Defendants also argue that, to the extent Plaintiff's Complaint and Amended Complaints seek injunctive relief, they are entitled to summary judgment as to such claims because Plaintiff is not entitled to injunctive relief. Injunctive relief requires a party to demonstrate that (1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Upon the

undersigned's review of his pleadings, declarations, and evidence, Plaintiff has not established entitlement to relief under the factors set out in *Winter*. As detailed above, the undersigned recommends granting Defendants' Motion for Summary Judgment, making it plain that Plaintiff is unlikely to be successful in the underlying dispute. Plaintiff also has not convinced the undersigned that he will suffer irreparable injury if he is not granted a preliminary injunction, nor has he established that the balance of equities tips in his favor or that an injunction is in the public interest. Therefore, the undersigned recommends denying any request for a preliminary injunction found to be contained in Plaintiff's pleadings.

Having reviewed each of the grounds in Defendants' Motion for Summary Judgment, ECF No. 298, and Plaintiff's response to that motion, ECF No. 328, the undersigned recommends Defendants' motion be GRANTED.

D.    Dommers' Motion for Summary Judgment, ECF No. 316

Defendant Martin P. Dommers, Jr., M.D. filed a separate Motion for Summary Judgment, ECF No. 316, to which Plaintiff responded, ECF Nos. 334 (Pl.'s Resp., 423 (add'l attachments in support of responsive memorandum). Plaintiff brought § 1983 claims against Dommers, a radiologist in private practice, alleging in principal that Dommers failed to "provide [Plaintiff] treatment for the cronic [sic] subdural brain injuries which went beneath the subarchoniod spaces and developed hemmorahage on the brain small puntate." ECF No. 142 at 8. Plaintiff asserts that Dommers deviated from medical standards and practices by failing to treat Plaintiff's serious condition of chronic subdural. ECF No. 334 at 6. In this regard, Plaintiff argues that Dommers was deliberately indifferent to Plaintiff's serious medical condition in violation of the Eighth Amendment by failing to provide treatment for Plaintiff's chronic subdural.

Upon his review of Plaintiff's allegations, Dommers concluded that his only contact with Plaintiff occurred on December 12, 1996, a date on which Dommers interpreted an unenhanced MRI of Plaintiff's brain and authored a radiology report dated December 13, 1996. Dommers Aff., ECF No. 316-2, ¶ 5. Dommers explained that, because the MRI was performed in 1996, he had no records regarding his study of or interpretation of the MRI. *Id.* ¶ 6. In his radiology report, Dommers found the MRI of Plaintiff's brain to be unremarkable. ECF No. 82-8 (Dec. 13, 1996 MRI Rpt.). Having reviewed his report, Dommers observed:

> The findings on the December 12, 1996 MRI were incidental, of no clinical significance and required no recommendations for follow-up examinations. I noted the presence of a pineal cyst in my report, which is a developmental anomaly of no clinical significance. I noted the presence of punctuate hyperintensities in the periventricular white matter in my report. These are normal anatomic structures and were of no clinical significance. There was no evidence on the MRI that the Plaintiff had a subdural hematoma and there were no findings on the MRI to suggest that any follow up examinations were necessary or should be recommended.

ECF No. 316 ¶ 7. After interpreting Plaintiff's MRI on December 12, 1996, Dommers did not provide any other medical care or treatment to Plaintiff. *Id.* ¶ 6.

Dommers moves for summary judgment on the following grounds: (1) Plaintiff failed to state a cause of action against Dommers under 42 U.S.C. § 1983; (2) Plaintiff's claims against Dommers are barred by the statutes of limitations and/or repose; (3) Plaintiff failed to establish that Dommers acted with deliberate indifference towards Plaintiff; (4) Plaintiff failed to comply with the statutory requirements for filing any action for professional negligence or medical malpractice against Dommers; and (5) Plaintiff's Complaint and Amended Complaints are frivolous under 28 U.S.C. § 1915(e). ECF No. 316 at 2. Upon review of these grounds, the undersigned finds that Dommers is entitled to summary judgment because Plaintiff's claims against Dommers are barred by the applicable statute of limitations.

As discussed above, the appropriate statute of limitations for application to Plaintiff's § 1983 claims is three years. S.C. Code §§ 15-3-530 (5), 15-3-535. The medical records submitted by Plaintiff confirms that Dommers interpreted an unenhanced MRI of Plaintiff's brain in December 1996. *See* ECF No. 334, *see also* ECF No. 82-8. In responding to Dommers' Motion for Summary Judgment, Plaintiff does not respond to Dommers' statute of limitations argument, nor does he claim Dommers performed services on him after December 13, 1996. ECF No. 334.) Pursuant to S.C. Code Ann. § 15-3-530, Plaintiff had three years from December 13, 1996, or until December 13, 1999, to bring this action against Dommers. Plaintiff did not bring this action against Dommers until January 24, 2011, nor does he argue or present facts suggesting the statute of limitations should be tolled. Accordingly, Plaintiff's claims against Dommers are time-barred, and Dommers' motion for summary judgment should be granted.

E.      Plaintiff's Motion for Summary Judgment

In addition to responding to Defendants' motions for summary judgment, Plaintiff also filed a motion he styled "Motion for Summary Judgment 56(f) Fed. R. Civ. P." ECF No. 426. Defendants filed responsive briefs, arguing that Plaintiff's Motion for Summary Judgment did not raise independent grounds for summary judgment, but instead, restated factual allegations set forth in his complaint and did not provide law to support his claims. *See* ECF Nos. 434, 436. In reply, Plaintiff again refers to his Amended Complaints and argues genuine issues of fact exist that would permit a jury to find for him. *See* ECF No. 440.

Having reviewed Plaintiff's motion and reply, as well as Defendants' responses, the court finds Plaintiff's motion to be without merit. In his memoranda, Plaintiff cites to his Amended Complaints and asserts that he has presented "material fact[s]." *See* ECF Nos. 426 at 2-3, 440 at 3. Plaintiff has not argued, nor has he demonstrated, entitlement to judgment in his favor as a

matter of law. Rather, he submits that there exist genuine issues of material fact from which a reasonable jury could infer that unidentified prison officials were deliberately indifferent to his serious medical needs. ECF No. 426 at 1-2. Plaintiff has not established he is entitled to judgment as a matter of law. Further, as discussed more fully above, considering all facts in favor of Plaintiff when considering Defendants' motions, Defendants are entitled to summary judgment. Plaintiff's Motion for Summary Judgment, ECF No. 426, should be denied.

      F.      Plaintiff's Motion for Preliminary Injunction, ECF No. 445

In his motion for preliminary injunction, Plaintiff seeks injunctive relief requiring (1) Defendants Byers, Eagleton, Chavis, McFadden, Stokes, Miller, Smith, Jenkins, and Fox, in addition to several individuals who have not been designated by the court as defendants in the matter,[12] to provide Plaintiff with an "appropriate course of medical treatment;" and (2) Byers to arrange for Plaintiff to be examined by "LPN Oswald"[13] to include electrocardiograms, blood pressure checks, heart beat monitoring, and lab tests on Plaintiff's blood. ECF No. 445 at 2. Plaintiff contends that he will suffer irreparable harm if the preliminary injunction is not granted, that the balance of hardships favors Plaintiff over Defendants, that he is likely to succeed on the merits of the underlying action, and that granting the preliminary injunction is in the public interest. *Id.* at 4-7. Defendants filed responses in opposition to the motion. *See* ECF Nos. 457, 461.

A preliminary injunction temporarily affords an extraordinary remedy prior to trial that can be granted permanently after trial. *See Winter*, 555 U.S. at 23. The party seeking a preliminary injunction must demonstrate that (1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of

---

[12] Plaintiff identified the additional individuals as "RN Ms Pitts, RN Ms Terry Andrews, Ms RN James, Ms Deborah Cunningham, and MD John McCree Physician." ECF No. 445 at 1.
[13] Review of the docket does not establish that LPN Oswald is a party to this action.

equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20. The plaintiff must establish all four elements to receive injunctive relief. *Id.* "A preliminary injunction is an extraordinary remedy never awarded as of right." *Id.* at 24. In each case, courts must balance the competing claims of injury and consider the effect on each party of granting or withholding the requested relief. *Id.* The court must pay particular regard for the public consequences of employing the extraordinary remedy of injunction. *Id.*

As discussed above, Plaintiff cannot establish that he is entitled to relief under the factors set out in *Winter*. Plaintiff is unlikely to be successful in the underlying dispute. Plaintiff also has not convinced the undersigned that he will suffer irreparable injury if he is not granted a preliminary injunction. Additionally, Plaintiff has not established that the balance of equities tips in his favor or that an injunction is in the public interest. Therefore, the undersigned recommends denying Plaintiff's Motion for Preliminary Injunction, ECF No. 445.

G.     Plaintiff's Motion for Permanent Preliminary Injunction, ECF No. 327

Plaintiff has also moved for a "permanent preliminary" injunction, contending that he is entitled to an order requiring certain unidentified defendants to provide Plaintiff with "essential or adequate" medical care. ECF No. 327 at 3. Plaintiff further contends that he will suffer irreparable harm if the preliminary injunction is not granted, that the balance of hardships favors Plaintiff over the unidentified defendants, that he is likely to succeed on the merits of the underlying action, and that granting the preliminary injunction is in the public interest. *Id.* at 1-4. Defendants oppose this motion, ECF Nos. 348-51.

A permanent injunction resolves the merits of a claim and imposes an equitable remedy because a legal one is inadequate. *See eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). A party seeking a permanent injunction must demonstrate that (1) he has suffered

irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and the defendant, remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *Id.* (citations omitted). As with the request for a preliminary injunction, Plaintiff is unable to meet these requirements. Accordingly, the undersigned recommends that Plaintiff's motion for permanent injunction should be denied.

H.     Plaintiff's Motions for Temporary Restraining Orders (TRO), ECF Nos. 368, 425

On November 4, 2011, and again on February 21, 2012, Plaintiff moved for entry of TROs. ECF Nos. 368, 425. In his first motion for a TRO, Plaintiff seeks to prevent tampering with his meals, claiming such tampering has been ignored by "Mr. Joel E. Anderson, Director, Support Services, Willie F. Smith, Food Service Institutional Coordinator, Senior Food Director Ronald Evans," Byers, and Drago; and hopes to enjoin the SCDC's practice of placing two inmates in one cell in the Special Management Unit. ECF No. 368 at 1, 5. In his second TRO request, Plaintiff seeks the following: (1) to restrict "Ms Tarcia James RN" from harassing or discriminating against Plaintiff for exercising his right to sick call; (2) to restrict "Ms RN James, Andrews and Ms RN Pitts" from going near or dealing with any matter related to Plaintiff's medical issues; (3) to require "Nurse Ms Oswald" to monitor Plaintiff's blood pressure; (4) to require "RN Seabag" to conduct EKGs on Plaintiff's heart; (5) to require "Associate Warden Mr. Parker and classification Ms Lee" to move Plaintiff to a housing unit where smoking does not occur; (6) to restrict Eagleton, Chavis, McFadden, Smith, Stokes, Drago, "Michelle, Miller Sellars, Beinar," Sampson, Bradham, and Byers from communicating to prison officials at McCormick Correctional Institution to create hostility towards Plaintiff; (7) to require "Chaplin Ms Barber" to have an open door policy and assist Plaintiff whenever he needs prayer and/or

religious therapy; (8) to require "Warden Parker" to respond to Plaintiff's inquiry regarding his medical needs; and (9) to require "Grievance Coordinator Ms Culbreath to process a grievance. ECF No. 425-1 at 1-4.

The issuance of a TRO is governed by the same general standards as the grant of a preliminary injunction. *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F3d 411, 422 (4th Cir. 1999). A party seeking a TRO must establish (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of injunctive relief; (3) that the balance of equities tips in his favor; and (4) that the TRO is in the public interest. *Winter*, 555 U.S. at 20.

Having reviewed both of Plaintiff's motions for a TRO, as well as Defendants' responses to these motions, the court finds Plaintiff has presented no argument specifying the evidence that he claims establish the elements required for a TRO. In this regard, the undersigned cannot find any evidence supporting the conclusion that Plaintiff will succeed on the merits of his claims, that Plaintiff will suffer irreparable injury, that the balance of equities tips in his favor, that the public interest would be served by the issuance of a TRO. Accordingly, the undersigned recommends that Plaintiff's Motions for TRO, ECF Nos. 368, 425, be denied.

I.      Plaintiff's Motion for Judgment on the Pleadings, ECF No. 450

In Plaintiff's Motion for Judgment on the Pleadings, Plaintiff contends he is entitled to judgment because Dommers and other unidentified defendants knew that Plaintiff had "a clinical history of a chronic subdural and a 5 mm blood clot on the brain," which was "objectively serious" and "needed appropriate medical care." ECF No. 450 at 1. Because Dommers and the unidentified defendants had knowledge of Plaintiff's serious medical condition and failed to respond to his medical needs, Plaintiff asserts that Dommers and the unidentified defendants

were deliberately indifferent to Plaintiff's serious medical needs. *Id.* at 2. In response to Plaintiff's motion, Dommers argued that "[t]here is absolutely no legitimate basis for the Plaintiff to be granted a judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure." ECF No. 464 at 1.

Any party may move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). A Rule 12(c) motion challenges the legal sufficiency of the opposing party's pleadings and operates in much the same manner as a motion to dismiss under Rule 12(b)(6). *Boldt Co. v. Thomason Elec. & Am. Contractors Indem. Co.*, 820 F. Supp. 2d 703, 704 (D.S.C. 2007) (citing *Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998)). A motion for judgment the pleadings can only be brought after the pleadings are closed. Fed. R. Civ. P. 12(c); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Judgment on the pleadings is appropriate if, assuming the truth of all materials facts pled in the non-moving party's pleading or responsive pleading, the moving party is nonetheless entitled to judgment as a matter of law. *Boldt Co.*, 820 F. Supp. 2d at 704 (citing *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989)); *Tollison v. B & J Mach. Co., Inc.*, 812 F. Supp. 618, 619 (D.S.C.1993) ("The test applicable for judgment on the pleadings is whether or not, when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain or whether the case can be decided as a matter of law.") (quoting *Smith v. McDonald*, 562 F. Supp. 829, 842 (M.D.N.C. 1983)).

The undersigned's review of the docket shows that Dommers filed answers denying the factual allegations set forth in Plaintiff's Complaint and Amended Complaints and asserted numerous affirmative defenses to Plaintiff's claims. ECF Nos. 67, 154, 271. Accepting all Dommers' well-pleaded allegations in his answers as true, and drawing all reasonable inferences

thereof, the undersigned concludes that Plaintiff cannot establish his entitlement to judgment on the pleadings. Accordingly, the undersigned recommends denying Plaintiff's Motion for Judgment on the Pleadings, ECF No. 450.

J.     Plaintiff's Motion for Default Judgment, ECF No. 403

On January 11, 2012, Plaintiff filed a motion to compel certain discovery responses. ECF No. 403. As part of that discovery motion, Plaintiff also seeks the court's order of default judgment based on Defendants "intentionally with callous indifference refus[al] to provide health care" and "ultimate[] refusal to answer Plaintiff's last set of interrogatories . . . ." *Id.* at 1-3. In response, Defendants argued that they fully responded to Plaintiff's written discovery requests and further asserted that Plaintiff seeks default judgment "for the same reasons he filed his initial Complaint" and that he has not demonstrated that any properly served Defendant failed to timely answer the Complaint. ECF No. 411 at 3; *see also* ECF No. 410. The undersigned agrees with Defendants. Plaintiff has not established entitlement to default judgment as to any Defendant, and his Motion to Compel and for Default Judgment, ECF No. 403, should be denied.

K.     Plaintiff's Motion for Entry of Default, ECF No. 470

On April 25, 2012, Plaintiff filed an affidavit seeking Entry of Declaration of Judgment for Default as to Defendants Smith, Spiveys, Spires, Stokes, Roman, Drago, Chavis, and McFadden, claiming they had not answered the Complaint he served upon their attorney on August 23, 2011. ECF No. 470 at 2. In response, Defendants indicate the answer they filed on September 6, 2011, ECF No. 260, appropriately responded to the Complaint Plaintiff referenced in his motion. ECF No. 481. The undersigned agrees with Defendants. Plaintiff has not established entitlement to an entry of default, and that motion, ECF No. 470, should be denied.

IV.     Recommendation

Wherefore, based upon the foregoing, the undersigned recommends that the motions for summary judgment filed individually by Dommers, ECF No. 298, and collectively by Stokes, Byers, McFadden, Chavis, Smith, HCP, Sampson, Rainwater, Martin, Roman, Fox, Miller, Spires, Williams, Spiveys, Jacobs, Eagleton, Bradham, Kelley, Drago, Muhammad, and Jenkins, ECF No. 316, be **GRANTED**.  The undersigned further recommends that Plaintiff's motion for summary judgment, ECF No. 426; motion for judgment on the pleadings, ECF No. 450; motions for temporary restraining orders, ECF Nos. 368, 425; motion for preliminary injunction, ECF No. 445; motion for permanent injunction, ECF No. 327; motion for default judgment, ECF No. 403; and motion for entry of default, ECF No. 470 be **DENIED**.  If the court accepts this recommendation, all other pending motions—ECF Nos. 378, 398, 403, 405, 412, 435, 442, 463, 469, and 479—will be moot.

IT IS SO RECOMMENDED.

June 20, 2012                                        Kaymani D. West
Florence, South Carolina                    United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**